William Jewell TABOR, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 95–CA–002167–MR.

Court of Appeals of Kentucky.

May 9, 1997.

Rehearing Denied July 18, 1997.

Jill Hall Rose, Lexington, for Appellant.

A.B. Chandler, III, Attorney General, Karen Quinn, Assistant Attorney General Criminal Appellate Division, Frankfort, for Appellee.

BEFORE GUDGEL, JOHNSON and SCHRODER, JJ.

*OPINION*

JOHNSON, Judge.

William Jewell Tabor (Tabor) appeals from a final judgment of conviction entered on July 31, 1995, by the McCracken Circuit Court. Tabor was convicted of burglary in the third degree, in violation of Kentucky Revised Statutes (KRS) 511.040, and the status offense of persistent felony offender in the first degree (PFO I) in violation of KRS 532.080, and sentenced to prison for fifteen years. Tabor raises two issues on appeal: (1) whether the trial court violated his right to a speedy trial; and (2) whether the trial court erred by denying his motion for a mistrial when a potential juror stated during voir dire that she might have recognized Tabor from a visit to Western Kentucky Correctional Complex. Finding validity to the second issue, we reverse and remand for a new trial.

## I. Speedy Trial

Tabor was indicted by the grand jury on March 16, 1993, for burglary in the third degree and being a PFO I. Tabor failed to appear for trial on July 19, 1993.[1] A new trial date was set for October 21, 1993. On September 28, 1993, Tabor filed a *pro se* motion for public funds for the purpose of hiring an expert in the area of fingerprint identification. Before the trial court ruled on this motion, Tabor filed a *pro se* motion to

---

1. Tabor was convicted of the offense of bail jumping and this Court affirmed his conviction on September 22, 1995.

dismiss and a motion for a speedy trial on October 11, 1993. However, on October 18, 1993, Tabor's counsel moved for a continuance and for a psychological evaluation of Tabor. The trial court entered orders on October 19, 1993, continuing the trial and seeking a psychological evaluation. On November 1, Tabor, *pro se,* filed a "supplement to pro se motion for expert funding" requesting "DNA expert funding." On November 1, 1993, the trial court ordered the appointment of an expert to review the fingerprint evidence. The motion to fund a DNA expert was denied on November 22, 1993. The psychological evaluation that found Tabor competent to participate in his own defense was filed with the trial court on December 9, 1993. By order entered on December 29, 1993, the case was set for trial for the third time on March 21, 1994. Tabor's counsel filed a "motion for appointment of another expert witness" on March 1, 1994. On March 7, 1994, Tabor's counsel moved the trial court to continue the March 21, 1994 trial date due to a scheduling conflict of counsel. On March 15, 1994, the trial court ordered the appointment of another expert to review the fingerprint evidence. On March 21, 1994, an order was entered which continued the trial to July 18, 1994. On March 21, 1994, another order was entered appointing a third expert to review the fingerprint evidence. On June 20, 1994, Tabor's counsel moved for another continuance based on his desire to attend a national criminal defense seminar. On November 21, 1994, the trial court set the trial for March 22, 1995. On March 6, 1995, Tabor's counsel moved for an independent defense expert, but the motion was denied on April 4. The trial was held on June 29, 1995.

In *Preston v. Commonwealth,* Ky.App., 898 S.W.2d 504, 506 (1995), this Court noted that when a defendant moves for a speedy trial or for a dismissal based on denial of his right to a speedy trial, he is precluded from "complain[ing] of a lapse of time attributable to continuances he sought and received from the trial court." Since the delay in holding the trial was attributable solely to Tabor, he is precluded from claiming unreasonable delay and this issue is without merit.

## II. Voir Dire

Tabor also alleges that the trial court erred in not declaring a mistrial when a prospective juror, during voir dire, stated in front of the entire venire that she had perhaps seen Tabor during a visit to Western Kentucky Correctional Complex. Tabor's counsel moved for a mistrial but the trial court denied the motion.

The dialogue went as follows:

Mr. Kaltenbach: ... My first question to you is, does anyone know William Jewell Tabor or any member of his family or is in any way related to the defendant, William Jewell Tabor.

Prospective Juror: I don't know. I think I've met him. Was he in —(inaudible)—

Mr. Kaltenbach: W?

Prospective Juror: West Kentucky Correctional Center.[2]

Mr. Kaltenbach: I don't know. You think you have some doubt in your mind as to whether you might know him, Ms. Riley?

Prospective Juror: Well, I took my father-in-law to see my brother-in-law.

Mr. Kaltenbach: Maybe you should come up and approach the bench and we'll see.

(Conference at the bench out of the hearing of the jury.)

The Court: I didn't hear what you said exactly. You think you might know him. Is that what it is?

Prospective Juror: Freeland Riley is my brother-in-law.

The Court: Right.

Prospective Juror: And I took my father-in-law up to see him, and I was thinking he looked like a person that came over to the table and sit at the table and talked to us.

The Court: At an institution?

Prospective Juror: Um-hum.

Mr. Kaltenbach: That's the reason I asked to approach the bench.

**2.** The correct name of the penal institution located in Fredonia is "Western Kentucky Correction- al Complex."

The Court: I understand. He probably was because that's where he is. And if you think you know him from that institution, I think I'm going to excuse you from this panel. Would you just have a seat back in the audience, Please. Thank you, Ma'am.

(Prospective Juror leaves the bench.)

Mr. Kaltenbach: I didn't want that discussed in front of the jury, Judge.

The Court: Good point. My apologies.

Mr. Little: You Honor, If I may, at this point I would move for a mistrial because the jury panel—because they heard the possibility that my client has been in a correctional institution. Furthermore, Ms. Riley, I believe it is, has been excused, and my client would not be able to receive a fair trial if he was . . .

The Court: Because she was excused?

Mr. Little: No, because she said in front of the other members of the panel that she believes she knew him from a correctional institution.

The Court: Did she? I didn't hear her say that. Did she say that she was . . .

Mr. Kaltenbach: She said that . . . she asked me if he'd been in WKC is what she said.

The Court: Ms. Riley, could I ask you to come up here just a minute, please. I didn't hear her say anything; but she may have said something I didn't hear.

(Prospective Juror approaches the bench.)

The Court: Ms. Riley, when you were sitting out there in the jury and you responded to Mr. Kaltenbach's question, do you remember what you said exactly?

Prospective Juror: When?

The Court: When you were sitting out there in the jury box just now.

Prospective Juror: Back here?

The Court: Yes, Ma'am.

Prospective Juror: I asked if he's been in a correctional center, that I thought I had seen him.

The Court: Did you say correctional center?

Prospective Juror: I said WKC.

The Court: You didn't say correctional center? You don't remember?

Prospective Juror: I don't remember that. I said WKC.

The Court: And that's what you recall her having said?

Mr. Kaltenbach: That's what I recall.

The Court: And you recall her as saying?

Mr. Little: You Honor, I'm positive she said correctional center.

Prospective Juror: I said WKCC.

Mr. Little: I believe you added correctional center after that.

Prospective Juror: I might have. I don't know.

The Court: Ms. Riley, thank you.

(Prospective Juror leaves the bench.)

The Court: Mr. Kaltenbach?

Mr. Kaltenbach: My recollection of what she said was that she had been at WKC.

The Court: Let's assume she said correctional center.

Mr. Kaltenbach: At that point, if she said correctional center, I don't know that a jury would know . . . the rest of the jury would have heard what she said, and if they did, that they would have associated that with him being . . . having been convicted of a felony. I don't know.

The Court: Your point may be well taken, but I'm going to deny it for the record.

Mr. Little: Yes, sir.

The Court: And, we'll just try it.

Mr. Little: Okay. Thank you for hearing me.

Tabor has a constitutional right to a trial by an impartial jury. U.S. Const. Amend. VI, XIV; Ky. Const. § 11. The trial court has broad discretion in determining whether a jury panel should be dismissed, and its ruling should not be disturbed absent a clear abuse of discretion. *Thompson v. Commonwealth,* Ky., 862 S.W.2d 871, 874 (1993). *See also Commonwealth Department of Highways v. Clore,* Ky.App., 438 S.W.2d 498, 500 (1969).

Little case law exists regarding dismissal of an entire venire. Most case law deals with dismissal based upon Kentucky Rules of

Criminal Procedure (RCr) 9.36 which states that if the trial court determines that there is a "reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence," the judge shall excuse that person as not qualified. In *Gould v. Charlton*, Ky., 929 S.W.2d 734, 739 (1996), a case which involved juror exposure to extrajudicial information, the Kentucky Supreme Court stated that, "[i]t is the impact [that] exposure to information has upon a person which is determinative, not the mere exposure itself." The Court emphasized a trial court's discretion in declaring prejudice which is to be based upon a totality of the circumstances. While the record indicates that neither Tabor nor the trial court questioned other prospective jurors as to whether they had actually been prejudiced by the remarks, prejudice does not have to be actually demonstrated. In *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978), the Supreme Court stated, "[p]rejudice must be shown unless it may be *clearly implied* in a given case from the totality of the circumstances." *Id.* at 235 (emphasis added). *See also Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713, 716–717 (1991).

Ms. Riley's comment constituted an improper reference to imprisonment, and thus, other crimes committed by Tabor. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person. Kentucky Rules of Evidence (KRE) 404(a).

In *Clark v. Commonwealth*, Ky., 833 S.W.2d 793, 795 (1991), the Kentucky Supreme Court stated as follows:

> The general rule is that evidence of crimes committed "other than the one that is the subject of a charge is not admissible to prove that an accused is a person of criminal disposition." Lawson, The Kentucky Evidence Law Handbook, 2d ed., Sec. 2.20(A) (1984). Evidence of other criminal or wrongful acts may be introduced as an exception to the rule to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*See also Drumm v. Commonwealth*, Ky., 783 S.W.2d 380, 385 (1990), and *Redd v. Commonwealth*, Ky.App., 591 S.W.2d 704, 708 (1979).

■ Since Tabor testified in his own defense, he was subject to impeachment if he had any prior felony convictions. Kentucky Rules of Evidence (KRE) 609. However, since Tabor's conviction for bail jumping was on appeal and not final, he could not be impeached based upon that conviction. *Commonwealth v. Duvall*, Ky., 548 S.W.2d 832 (1977). "It has been recognized that presenting a prior felony conviction to a jury for the purpose of impeachment must have a prejudicial effect." *Commonwealth v. Richardson*, Ky., 674 S.W.2d 515, 517 (1984). The inability of the Commonwealth to use the bail-jumping conviction for impeachment purposes re-enforces our conclusion that Tabor was prejudiced by the voir dire dialogue.

The only case that we have been able to find in point is *Richardson v. State*, 666 So.2d 223, 224 (Fla.App., 1995). In *Richardson*, one of the potential jury members worked as a corrections officer. The potential juror's answer to a voir dire question suggested that she knew the defendant through her employment. In reversing the trial court, the appellate court found that the implication that the defendant was a convicted felon who had previously served time was sufficient to deprive the defendant of a trial by an impartial jury.

While Ms. Riley's reference to the penal institution in the case at bar was not evidence and while her reference only inferred imprisonment, the fact that this juror was excused by the trial court following a conference outside the hearing of the remaining prospective jurors leads to only one conclusion: the excused juror was correct in her suspicion that she may have met Tabor at a correctional institution. Any argument that Ms. Riley could have been excused from jury service for some other reason, or that Tabor's presence at the correctional institution could have been for some reason other than his incarceration as a felon, defies common sense. If Ms. Riley's concerns that led to the bench conference were not prejudicial to her continued jury service, then she would not have been excused by the trial court. If Ms. Riley had not in fact met Tabor at the

correctional institution, or if Tabor had been at the correctional institution for some reason other than being a convicted felon, then obviously either the trial court or defense counsel would have explained the circumstances to the remaining prospective jurors. The courts and litigants constantly call upon jurors to use their common sense and life experience during jury service. *Commonwealth v. Hocker*, Ky., 865 S.W.2d 323, 325–326 (1993); *Mack v. Commonwealth*, Ky., 860 S.W.2d 275, 279 (1993); and *Maddox v. Commonwealth*, Ky., 349 S.W.2d 686, 693 (1960). Common sense and life experience would leave a reasonable juror with no choice but to conclude that Ms. Riley was excused from jury service because she had met Tabor while he was incarcerated in a correctional institution.

Since Tabor's prior felony conviction was inadmissible as evidence or for the purposes of impeachment, it was prejudicial for the jury to learn of this conviction through voir dire. The juror's comment in reference to Tabor's general criminal disposition tainted the entire venire, and thus violated the constitutional mandates for a fair and impartial trial. The judgment of conviction is reversed and this matter is remanded for a new trial.

GUDGEL, J., concurs.

SCHRODER, J., concurs in part and dissents in part.

SCHRODER, Judge, concurring in part and dissenting in part.

I agree with the majority's opinion in affirming the trial court in finding the defen-dant's right to a speedy trial was not violated. However, I disagree with the decision to reverse and remand for failing to declare a mistrial when one potential juror stated during voir dire that she might have recognized the defendant from a visit to Western Kentucky Correctional Complex.

The case of *Waggoner v. Commonwealth*, 255 Ky. 1, 72 S.W.2d 723 (1934) is similar to appellant's claim herein. In *Waggoner, supra*, the petitioner claimed that the jury panel had been prejudiced by the statement of one of the jurors "... that he had known Waggoner for several years and a little incident had happened in his store that caused him to hold prejudice against Waggoner." *Id.*, 72 S.W.2d at 724 and 725. The court inquired of the jury panel as to whether the statement would influence them in any way in rendering their verdict. With a negative response, the court denied the motion to discharge the jury. In the case sub judice, in retrospect, it may have been better to make further inquiries to the jury or at least give them an admonition. After the judge denied a mistrial, appellant's counsel didn't request the admonition. At this point I would see the error, if any, as harmless, and affirm the trial court's denial of a mistrial.