# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 26, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0006-MR

CODY ALAN ARNETT             APPELLANT

<table>
<tr><td>V.</td><td>ON APPEAL FROM SCOTT CIRCUIT COURT<br>HONORABLE JEREMY MICHAEL MATTOX, JUDGE<br>NO. 18-CR-00304</td></tr>
</table>

COMMONWEALTH OF KENTUCKY             APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Following a jury trial in Scott Circuit Court, Cody Alan Arnett was convicted of one count of burglary in the first degree, three counts of rape in the first degree, two counts of sodomy in the first degree, and one count of tampering with physical evidence. On each of the burglary, rape and sodomy charges, Arnett was sentenced to twenty years' imprisonment, enhanced to life because he was adjudged to be a first-degree persistent felony offender (PFO-1). On the tampering conviction, he received a five-year sentence, enhanced to twenty years' given his PFO-1 status. Arnett now appeals his conviction as a matter of right, alleging juror selection errors, trial errors and penalty phase errors. Finding none of his contentions meritorious, we affirm his convictions and sentences.

## I. FACTUAL AND LEGAL BACKGROUND

On September 22, 2018, Arnett, who was thirty-three years old, spent the day drinking and later that evening went to a bar in Scott County, Kentucky where he consumed approximately eight more drinks. Arnett left the bar and drove to a nearby college campus. Arnett walked around an area of the campus containing student housing. Arnett's version of the events that followed are starkly different from that of the female student he would encounter.[1]

According to Arnett's testimony, while wandering drunk around student housing, an eighteen-year-old female student saw him and invited him into her on-campus apartment which was a two-story townhouse that she shared with four other students. Once inside the apartment, according to Arnett, he and the female student sat on the couch and after he put his hand on her thigh, she started kissing him, undid his pants, and initiated oral sex. Arnett testified the two then attempted to have sex on the couch, moved to the floor, and then back to the couch. He testified he was not sure if he ejaculated because he was taking a muscle relaxer. Arnett then said he went into the bathroom to crush another pill on a hard surface. According to Arnett, the female student initiated sex yet again in the bathroom where Arnett said that he began acting like "an asshole" because he was embarrassed by not being able to achieve an erection

_____

[1] To most effectively protect the identity and privacy of the victim, she will be referred in this opinion only as "the female student" or "the victim," and the witnesses and locations will also be given generic identities.

2

and began making vile sexual statements about the student. Arnett testified that the female student left the bathroom but returned screaming and then stabbed him with a knife in neck and thigh. She then took a shower while Arnett attempted to clean his wounds. Next, another female and a male knocked on the door, looked in and asked if the female student was "okay" to which she responded in the affirmative.

Arnett stated he then grabbed his belongings and left the apartment where he encountered a campus security officer who was soon joined by a police officer. According to Arnett, he said nothing about being stabbed by the female student because he did not want to get her in trouble.

The female student testified she had fallen asleep on the sofa in her dorm sometime after 1:00 a.m. on the morning of September 23, 2018, after being the designated driver for fellow members of her college volleyball team. She was awakened on the sofa by a man she had never seen before covering her mouth with his hand, holding a knife to her throat, and threatening her saying "don't make a sound or I'll slit your throat." Arnett pulled off her pants, put his fingers inside her, put his mouth to her genitals, shoved his penis in her mouth, and raped her.

According to the female student, after Arnett ejaculated, he put the knife to her spine and walked her to the bathroom where he turned on the shower and forcibly cleaned her saying, "[n]ow there's no evidence." However, the assault did not end and Arnett raped her again, forced his penis into her mouth again, and again put his mouth to her genitalia. During this second

3

prolonged assault, the victim grabbed Arnett's knife which he had laid on the counter of the bathroom and struck him in the throat and screamed. Arnett then punched her and tried to put her in a chokehold. The victim stabbed Arnett again, this time in the leg and then retreated into the shower stall. The victim's screams during her struggle awakened others in the apartment. In the shower, victim heard one of her roommates calling her name. Arnett locked the bathroom door and said, "[y]ou really want to die, don't you" and "[d]on't say a word!" Given these threats, the victim responded to her roommate by saying she was taking a shower. Arnett gathered his belongings and left the apartment where he encountered campus security and police.

On the night in question, four of the victim's roommates were in the apartment along with the boyfriend of a roommate. Three of the roommates and the boyfriend were in the two upstairs bedrooms and a downstairs bedroom was occupied by the fourth roommate. One upstairs roommate testified that when she went to bed, the victim was on the couch downstairs. The downstairs roommate testified that the victim was asleep on the couch when the downstairs roommate shut off the downstairs lights around 2:30 a.m. The downstairs roommate did not remember locking the door or checking to see if it was locked.

Three of the roommates and the boyfriend all testified that they awoke when they heard a scream at about 5:00 a.m. One roommate described victim's scream as "the worst scream I've ever heard in my life." Another roommate testified that the scream was "blood curdling" and when she went to the stairs

4

to peek over the banister, she heard a voice say "[n]ow look what you did, you woke them up." She also stated that the downstairs roommate ran up the stairs and said there was someone in her bathroom.

The roommate who had a boyfriend present went downstairs with the boyfriend and knocked on the bathroom door. She testified that the third time she knocked, the victim answered by saying "I'm just taking a shower." The boyfriend testified that while the victim did not ask for help, he thought "something was off in her voice." The roommate peered in the door and saw a man behind the door glaring at the shower. She then ran back upstairs and told her roommates to call 911 and campus safety.

The roommates testified they stayed upstairs until they heard the voices of responders who had detained Arnett outside the apartment. The four female roommates took the victim upstairs to get her dressed and called her father.

Arnett challenges his convictions based on seven alleged errors. He alleges two juror selection errors: (1) the jury panel was tainted, and (2) a juror was wrongfully struck. He alleges three trial errors: (1) the jury should have been allowed to visit the crime scene; (2) hearsay testimony was wrongfully admitted; and (3) the sodomy instructions violated his right to a unanimous verdict. Finally, he alleges two penalty phase errors: (1) the jury was given incorrect information regarding parole eligibility; and (2) the jury should not have been given information about his prior indictments.

5

## II. ANALYSIS

### A. Did the Trial Court Abuse its Discretion by Ruling that the Jury Panel had not Been Tainted? – Preserved

Arnett argues that a potential juror (called to replace a juror previously excused) whose responses to questioning in front of the jury pool were that she was a nurse practitioner who worked with rape victims in the past collecting evidence, had "see[n] the aftermath of what happens with these victims," and responded with "probably" to the court's query as to whether her experiences would affect her ability to serve as a juror in the case, had "tainted" the rest of the jury pool.

Arnett's counsel moved to strike this potential juror for cause which the trial court granted. Counsel then objected that this potential juror had tainted the overall jury pool. The trial court did not agree, determined that her statements were "very generic," and stated that it could not infer that her statements tainted the jury. No admonition was requested by Arnett's counsel.

A trial court has broad discretion in determining whether a jury panel should be dismissed, *King v. Commonwealth*, 374 S.W.3d 281, 288 (Ky. 2012), and the exercise of that discretion should be based upon the totality of the circumstances, *Tabor v. Commonwealth*, 948 S.W2d 569, 572 (Ky. App. 1997). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

6

Based upon the statements made by the potential juror, we cannot agree with the premise that such statements tainted the jury or affected, in any way, the outcome of the trial.

### B. Did the Trial Court Erroneously Grant the Commonwealth's Motion to Strike a Juror Who could have been Fair and Impartial? - Preserved

Arnett argues that the trial court abused its discretion in striking one juror for cause over his objection.

During *voir dire*, one potential juror raised his hand when the Commonwealth questioned the panel about whether any member might have difficulty convicting a defendant if the Commonwealth met its burden of proof in proving all the elements of the crime, but he or she still had unresolved doubts about factual matters that were not elements of the crime.

The same juror who had raised his hand was later called to the bench because he had failed to disclose an Interpersonal Protective Order (IPO) taken out against him. He acknowledged the IPO and stated that he had been unsure whether he needed to volunteer that information since it was neither a misdemeanor nor a felony. During this discussion, the Commonwealth questioned the potential juror about the earlier questions posed in *voir dire* and whether he would hold the Commonwealth to a higher burden of proof than necessary under the instructions. In response, he acknowledged he could get distracted by details that were not elements of the crime and that he could "get hung up" on unanswered questions regarding factual matters that were not elements of the crime. As an example, the following exchange occurred:

7

Commonwealth's Attorney: But the question is and I think you've answered it but yet again, if all we have to prove is 1, 2, and 3, but 7, 8, and 9 go unanswered is that . . .

Juror: In my mind.

Commonwealth's Attorney: Going to cause you a problem?

Juror: In my mind yeah.

Arnett's counsel questioned the man as well but his answers to questioning regarding his ability to strictly follow the jury instructions on the elements of an offense remained equivocal. The trial court granted the Commonwealth's motion to strike the man for cause over the objection of Arnett's counsel.

Kentucky Rules of Criminal Procedure (RCr) 9.36 states, "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." "The decision about whether to strike a juror for cause is within the sound discretion of the trial court." *Emmott v. Commonwealth,* 230 S.W.3d 563, 567 (Ky. 2007).

Here, the potential juror was obviously trying to be honest in answers and the trial court was correct in its concern regarding his confusion and his ability to objectively determine guilt in accordance with instructions. Based upon the potential juror's uncertain responses to questions regarding his basic ability to function as a juror, the trial court's decision to strike him for cause cannot be viewed as either erroneous or an abuse of its broad discretion.

8

### C. Did the Trial Court Abuse its Discretion by Denying Arnett's Motion to Have the Jury Visit the Crime Scene? – Preserved

Arnett argues that the trial court abused its discretion by denying his counsel's pretrial motion to have the jury visit the crime scene given the relatively short distance between the courthouse and the apartment and the apartment at the college.

Kentucky Revised Statutes (KRS) 29A.310(3) states, "[w]hen necessary the judge may authorize the jury to view the real property which is the subject of the litigation, or the place in which any material fact occurred, or the place in which the offense is charged to have been committed." In Kentucky we have long ruled that a trial court does not abuse its discretion in denying such a motion when the jury is provided with ample photographic evidence with which to familiarize itself with the scene. *Tungate v. Commonwealth*, 901 S.W.2d 41, 44 (Ky. 1995).

Twenty-five photographs of the apartment were admitted together with both a floorplan and blueprint of the apartment unit. Arnett cannot satisfactorily articulate how a visit to the apartment could have possibly offered a more persuasive defense than that which his counsel provided via the photographic materials submitted into evidence and his counsel's cross-examination of the witnesses. Under these facts, there was no abuse of discretion by the trial court regardless of the distance between the courthouse and the crime scene. While a trial court can weigh all the logistics of such a visit, that distance factor alone is not determinative and does not make such a visit "necessary" under the statute.

## D. Did the Trial Court Abuse its Discretion by Determining Certain Hearsay Testimony was Permissible as Excited Utterances? – Preserved

Arnett argues that the trial court abused its discretion by allowing a responding officer to recount statements made to her by the victim under the "excited utterance" exception to our rules against the admission of hearsay testimony. Specifically, he argues the statements were made by the victim in response to questions posed by the officer and could therefore not fall within this exception. On appeal, a trial court's decision to admit or exclude hearsay statements is reviewed for abuse of discretion. *Mason v. Commonwealth*, 559 S.W.3d 337, 342 (Ky. 2018).

The trial court overruled this objection and allowed the statements to be admitted as excited utterances owing to the fact that the statements were made within the first few minutes after the officer arrived on the scene which was immediately following the commission of the crimes. The officer in question testified she arrived in time to see Arnett exiting the victim's apartment, almost immediately detained Arnett, saw the victim exit the apartment wet and in a towel while holding the knife, crying hysterically, and shouting "he raped me" repeatedly. When fellow officers arrived within a minute of the officer's arrival, she went inside to check on the victim who told her what happened.

On cross examination, the officer testified she had asked the victim what happened prior to the victim's statements. Arnett's counsel then moved the court to strike the officer's testimony as being responsive to questioning therefore making the excited utterances exception inapplicable. At that

10

juncture, the trial court determined to allow the officer to finish her testimony and the court would thereafter review caselaw to determine the merit of the objection.

On redirect, the officer clarified the full factual context of her testimony testifying she found the victim upstairs in the apartment putting on clothes and asked her if she had showered. In response, the victim stated that Arnett had forced her to shower but that she had not brushed her teeth. Then, in response to being asked whether victim was injured, the victim stated to the officer that she had been struck in the head by Arnett and began verbalizing the extent of the attacks she had suffered.

The trial court ultimately denied Arnett's motion to strike, determining that the testimony could come in as excited utterances. The court explained its ruling by stating that questions posed by the officer were "basic" types of questions and the scope of the responses made by the victim were unexpected. Further, even though the statements were made in response to questions, there were enough factors weighing in favor of admission such as the immediacy of the statements relative to the crime, the victim's state of excitement, the lack of an opportunity for fabrication, and the visible signs of an assault occurring, to allow the statements.

Hearsay is an out of court statement offered into evidence to prove the truth of the matter asserted and hearsay statements are inadmissible unless they fall within certain recognized exceptions. One of the exceptions is for "excited utterances" which are statements "relating to a startling event or

11

condition made while the declarant was under the stress of excitement caused by the event or condition." Kentucky Rules of Evidence (KRE) 803(2). The basis for this exemption is that "statements made under the stress of the excitement caused by a startling occurrence are more likely the product of that excitement and, thus, more trustworthy than statements made after the declarant has had an opportunity to reflect on events and to fabricate." *Noel v. Commonwealth*, 76 S.W.3d 923, 926 (Ky. 2002).

In *Jarvis v. Commonwealth*, 960 S.W.2d 466, 470 (Ky. 1998), we listed eight factors a trial court might consider in determining whether a hearsay statement is admissible as an excited utterance under KRE 803(2):

> (i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

The record is clear that the trial court gave proper consideration to the circumstances surrounding the victim's statements, including the fact questions had been posed to the victim immediately following prolonged and violent sexual assaults, and weighed the factors bearing on its determination before concluding correctly that the excited utterance exception applied. The trial court therefore did not abuse its discretion in admitting the victim's statements through the officer.

12

**E. Did the Jury Instructions on the Two Counts of Sodomy Violate Arnett's Right to a Unanimous Verdict? – Unpreserved.**

Arnett next alleges he was denied his right to a unanimous jury verdict regarding his two convictions for first degree sodomy. Section 7 of the Kentucky Constitution guarantees criminal defendants the right to unanimous jury verdicts. Alleged unanimity errors are questions of law and are therefore reviewed *de novo. Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Schwab*, 628 S.W.3d 112 (Ky. 2021).

Arnett's counsel made no objection to either of the two sodomy instructions and therefore requests palpable error review under RCr 10.26 which we shall perform here. "[A] palpable error affecting the substantial rights of a party, even if insufficiently raised or preserved, is reviewable, and, upon a determination that it has resulted in manifest injustice, reversible." *Deemer v. Finger*, 817 S.W.2d 435, 437 (Ky. 1990). For an error to be palpable, and require reversal, it must be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

Arnett specifically argues that two jury instructions, presented to the jury for the two separate counts of first-degree sodomy, made it "possible that the jurors used the same incident of when 'the Defendant used his mouth to lick [victim's] vagina' to convict him on both counts, in violation of double jeopardy." According to the Arnett, a unanimity error occurred for two reasons. First, because the language regarding *where* each crime occurred is located

13

after a conjunctive "OR" in the instructions caused a lack of "differentiating detail. . . to contextualize where and when Cody committed [the] particular act." Second, the "instructions did not require all the jurors to agree on which act they were convicting him of committing."

"[A] general jury verdict based upon a single instruction convicting a criminal defendant of a crime when two or more separate instances of that single crime were presented at trial violates the requirement of a unanimous verdict." *Ruiz v. Commonwealth*, 471 S.W.3d 675, 678 (Ky. 2015), as modified (Oct. 29, 2015) (citing *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013)).

Here, Jury Instruction No. 9 (Count V) stated:

> You will find the Defendant. Cody A. Arnett guilty of First-Degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this County on or about the 23rd day of September, 2018 and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with [victim] when the Defendant used his mouth to lick [victim's] vagina **OR** when he inserted his penis into [victim's] mouth on the couch in the living room of a building located on the campus of Georgetown College in Scott County, Kentucky which was occupied at that time by [victim]; **AND**
>
> B. That he did so by forcible compulsion.

Jury instruction No. 10 (Count VI) was a verbatim copy of the preceding instruction except instead of saying "on the couch in the living room," it stated the event occurred "in the bathroom on the first floor."

14

Regarding Arnett's first assignment of error, that the instructions were vague in relation to the locations of the alleged criminal acts, we find that the instruction did not invite a unanimity error. A clear reading of either instruction makes it known that criminal events alleged occurred in two distinctly separate locations.

A more complex issue however is presented in Arnett's second assignment of error: What precise act formed the basis of the finding of guilt in either instruction?

KRS 510.070, partially quoted in the jury instructions, criminalizes *three* distinct acts. A person is guilty of first-degree sodomy when "[h]e engages in deviate sexual intercourse with another person by forcible compulsion . . . ." KRS 510.070(l)(a). In turn, "deviate sexual intercourse" is defined in our Commonwealth as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by a foreign object manipulated by another person . . . ." KRS 510.010(1). This definition "include[s] any act of fellatio, cunnilingus or anal intercourse." KRS 510.010 cmt.

In this case, the evidence at trial supported Arnett committing at least two forcible act of cunnilingus and two forcible acts of fellatio in violation of KRS 510.070(1)(a). Adding to the jury's inquiry was the fact that both forcible acts (fellatio and cunnilingus) could have occurred in both, or either, locations

15

(the living room and/or the bathroom).[2] If the jury determined that *both* criminal acts took place in *both* locations, such finding would have supported four separate convictions for first degree sodomy when Arnett was only indicted for, and found guilty of, two counts of first degree sodomy.

On their face, these instructions would clearly allow a jury to find Arnett guilty of first-degree sodomy whether it was believed he had forcibly compelled fellatio *or* cunnilingus in either location. This presents a case of a "multiple acts" error in the instructions where "the instruction does not specify which specific act it is meant to cover, [and] we cannot be sure that the jurors were unanimous in concluding the defendant committed a single act satisfying the instruction." *Martin v. Commonwealth*, 456 S.W.3d 1, 7 (Ky. 2015), *abrogated on other grounds by Sexton v. Commonwealth*, 647 S.W3d 227 (Ky. 2022).

To explain: If half the jury determined Arnett compelled fellatio on the victim, but not cunnilingus, and the other half of the jury decided he had forced cunnilingus but not fellatio, he could be found guilty of first-degree sodomy even if there was no consensus on which particular unlawful act he had committed. This presents a clear unanimity error. The sodomy instructions

---

[2] Regarding the assault which occurred in the living room (Instruction No. 9), at trial Arnett testified that the female student performed fellatio on him in the living room. The victim testified that Arnett forced both cunnilingus and fellatio on her in the living room. With regard to the assault occurring the bathroom (Instruction No. 10), Arnett testified that the female student performed fellatio on him in the bathroom. When questioned about the possibility of him performing cunnilingus on the student in both the bathroom and living room, Arnett admitted that such could have occurred but that he was unsure. The victim testified that Arnett forced both fellatio and cunnilingus on her in the bathroom.

16

presented in this case failed to simply specify which, of a possible two, criminal acts Arnett was accused of committing. We must caution trial courts that instructions should specify the precise alleged acts which constitute the criminal offense at issue in the cases before them.

We therefore hold that the instructions in this case were erroneous because the proof at trial demonstrated "two or more separate instances of a criminal offense" for each of the two charges of first-degree sodomy. *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013).

Having concluded the instructions were erroneous, we must now determine whether the errors were palpable. In our recent decision in *Johnson v. Commonwealth*, 2021-SC-0541-MR, 2023 WL 4037845 (Ky. June 15, 2023), we stated both our process of review and the standard of review in matters such as this.

> In all cases presenting an unpreserved error regarding a unanimous jury, the courts must "plumb the depths of the proceeding" and scrutinize the factual idiosyncrasies of the individual case. That includes a consideration of the weight of the evidence. Only if, upon review, a court can conclude "the error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process," will reversal be warranted. "It should be so egregious that it jumps off the page . . . and cries out for relief."

*Id.* at *8 (citations omitted).

As pointed out by the Commonwealth, there is little discussion of the jury instructions in the record. The trial court requested that defense counsel submit proposed instructions and stated that the parties would discuss the

17

instructions with the court prior to closing arguments. Thereafter, the trial court stated that while the jury took a break at the close of proof, the parties would finalize the instructions. This Court was unable to locate any instructions submitted by defense counsel in the written record and no other discussions regarding the instructions were located in the video record.

Given the testimony presented at trial, Arnett could have been convicted of four counts of first-degree sodomy. One count for forced cunnilingus in the living room, a second count for forced fellatio in the living room, a third count for forced cunnilingus in the bathroom, and a fourth count for forced fellatio in the bathroom. Arnett's defense was that all the sexual acts recounted, regardless of location, were entirely consensual. This "all or nothing" defense was the critical issue for the jury. Arnett giving and receiving oral sex, in both locations, was secondary at best. The outcome in this trial hinged not only on the physical evidence presented and what witnesses saw, but on the relative credibility of the victim and accused juxtaposed against the other witnesses and the physical evidence presented. Given the jury's wholesale repudiation of Arnett's objectively unbelievable defense, we have no reason to doubt that had Arnett been indicted for four counts of sodomy, instead of two, he would have been found guilty of all four offenses.

It is only against this factual and evidentiary backdrop that we conclude that the potential unanimity error presented by the instructions were not "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Johnson v. Commonwealth*, 2021-SC-0541-MR, 2023 WL

18

4037845, at *8 (Ky. June 15, 2023) (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)). Arnett wholly fails to persuade us that there is any probability that, but for the language in these instructions, a different result would have occurred, and he would not have been convicted on these two counts. Finally, in addition to these two sodomy convictions, Arnett received four other concurrent life sentences and, therefore, those convictions do not extend his total sentence.

### F. Was Arnett Unduly Prejudiced by the Presentation of Incorrect Information Regarding his Parole Eligibility during the Penalty Phase of the Trial? - Unpreserved.

Arnett argues that he is entitled to a new penalty phase because the Commonwealth presented incorrect parole eligibility information when the probation and parole officer testified the parole board could not order a "serve-out." The Court of Appeals in *Simmons v. Commonwealth*, 232 S.W.3d 531 (Ky. App. 2007), and other subsequent unpublished cases, has acknowledged that the parole board has the power to order serve outs for inmates with life sentences.[3] This error was not preserved by contemporaneous objection and Arnett again requests palpable error review pursuant to RCr 10.26.

On direct examination, a probation and parole officer correctly testified that the parole board has three options when reviewing an offender's parole

---

[3] The Supreme Court has yet to weigh in on this issue, but it has accepted discretionary review in *Conn v. Kentucky Parole Board*, 2022-SC-0198-DG, of a Court of Appeals opinion which follows *Simmons*. *See Conn v. Kentucky Parole Board*, 2020-CA-1495-MR, 2022 WL 1194186 (Ky. App. Apr. 22, 2022) (not final due to pending appeal).

eligibility; the parole board could grant Arnett parole, issue a deferment,[4] or order a "serve-out." The administrative regulations define "serve-out" as "a decision of the board that an inmate shall serve until the completion of his sentence." 501 Kentucky Administrative Regulations (KAR) 1:030 § 1(10). What this means in practical terms is that after an inmate appears before the parole board for the first time, the parole board can preclude that inmate from ever being considered for parole by it again. The probation and parole officer also correctly testified that if Arnett received six life sentences, he would be eligible for parole after serving twenty years.

Under later questioning by Arnett's counsel, the parole officer stated that she did not believe the parole board could give the offender a complete serve-out. The officer was notably hesitant in her answer as to what she thought the parole board could do and the Commonwealth, recognizing a concern, asked to approach the bench. The trial court admonished the parole officer to "not speculate" and Arnett's counsel resumed questioning and the parole officer's responses affirmatively agreed with Arnett's counsel that once Arnett was eligible for parole, he could be deferred for ten years and then ten years later could receive another ten-year deferment so that "in theory" a serve-out could happen. Arnett's counsel was apparently satisfied by this testimony and elicited no further testimony in this area and did not seek any admonishment

---

[4] KRS 439.340(14)(b) limits deferments to a maximum of ten years, "except for life sentences," and 501 KAR 1:030 § 3(2)(b) states that "[t]he board, at the initial or a subsequent review, may order a serve-out on a sentence."

20

or instruction to the jury from the trial court despite the fact that it was defense counsel who invited speculation on this topic.

Considering the officer's testimony and the sentencing phase as a whole without isolating the portion Arnett challenges, the record reveals that overall the jury was accurately informed of Kentucky's parole eligibility scheme and was made to understand that no inmate is guaranteed parole and could very well serve the entirety of the sentence determined by the jury; the very point Arnett's counsel was trying to make.

Given the scope of the horrific sexual, physical and emotional violence committed by Arnett, for which the jury unanimously found him guilty, and the totality of the penalty phase evidence presented, we do not believe a substantial probability exists that the jury would have recommended a lighter sentence had the parole officer's testimony about serve-outs been omitted or had the parole officer stated that the parole board could indeed order a serve out after Arnett appeared before it for the first time. Although the parole officer's testimony was not entirely accurate, the jury understood that Arnett might indeed have to serve the entirety of his life sentences. As a result, Arnett has failed to show any palpable error occurred or that reversal on this claim of error is warranted.

### G. Did the Commonwealth Improperly Introduce Documents to the Jury Containing Inadmissible Information During the Penalty Phase? – Unpreserved.

Lastly, Arnett argues that the Commonwealth introduced certified copies of not only Arnett's prior convictions, but also the underlying indictments in

21

violation of *Mullikan v. Commonwealth*, 341 S.W.3d 99, 101 (Ky. 2011). This error was not preserved and Arnett again requests palpable error review pursuant to RCr 10.26.

In 2006, in Jessamine County, Arnett was indicted for driving under the influence, fleeing or evading first degree, and theft of identity first degree. His judgment noted dismissal of the fleeing or evading charge. In 2007, also in Jessamine County, Arnett was indicted for robbery in the first degree and being a persistent felony offender. The judgment from that matter stated "robbery second degree as amended." In 2015, in Fayette County, Arnett was indicted for two counts of robbery in the first degree, one count of fleeing and evading, and PFO-2. The final judgment in that matter notes that the fleeing and evading charge was dismissed and both robbery counts were amended to robbery in the second degree.

The documents containing this information were introduced to the jury during its consideration of Arnett's PFO status. These materials were shown to Arnett's counsel prior to their presentation to the jury and counsel offered no objection.

KRS 532.055(a) provides a listing of the "[e]vidence [that] may be offered by the Commonwealth relevant to sentencing." With regard to prior offenses, such evidence may include, "[t]he nature of prior offenses for which he was convicted" (KRS 532.055(a)(2)), and "[t]he date of the commission, date of sentencing, and date of release from confinement or supervision from all prior offenses." KRS 532.055(a)(3). In *Mullikan*, we commented on our Court's history

22

of defining the scope of evidence of prior offenses which may be presented, stating that "[t]his Court has been struggling for the last fifteen years, through a series of cases, to define permissible evidence which may be introduced describing the 'nature of prior offenses.'" 341 S.W.3d at 108.  Beginning with *Robinson v. Commonwealth,* 926 S.W.2d 853 (Ky. 1996), this Court went to great lengths in attempting to define the "nature of prior offenses" settling upon "description of a general character" as being as far as is allowed in dealing with these prior crimes. In *Mullikan,* it was held that "the evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed" and went on to advise that "[w]e suggest this be done either by a reading of the instruction of such crime from an acceptable form book or directly from the Kentucky Revised Statute itself." 341 S.W3d at 109.

Clearly the documentation which contained Arnett's original charges, for which he was not ultimately convicted, should not have been shared with the jury as such documents conveyed information that fell well outside the permissible scope we have established. Trial courts need to be, and remain, mindful of our advisements in this area as there will be circumstances the extraneous information contained in court records can prove to be unduly prejudicial to defendants and require reversal.

However, such an error—standing alone—is not sufficient for relief under RCr 10.26, where an appellant must demonstrate that his substantial rights were affected by an error at trial that was manifest, fundamental and

23

unambiguous so as to threaten the integrity of the judicial process itself. *Baumia v. Commonwealth, 402* S.W.3d 530, 542 (Ky. 2013).

Neither the trial court nor the Commonwealth referenced or discussed the original charges in the indictments and we will also not, as Arnett requests, infer that a palpable error occurred here due to the lone fact that Arnett received the maximum sentences for his crimes. In the full context of the crimes Arnett committed, and the overwhelming evidence presented against him, such a presumption or inference is unreasonable. Arnett cannot establish that the mere presence of these underlying indictment materials the jury received had any impact on the jury's decision nor would we expect them to have any impact given the similar nature of the original charges juxtaposed against Arnett's ultimate convictions. Therefore, we cannot find the extraneous evidence to have created a palpable error.

### III. CONCLUSION

Upon review of the record in this matter, we are confident that Arnett received an appropriate trial and was properly convicted under the totality of the overwhelming evidence presented supporting each verdict. Accordingly, we affirm his convictions and sentences by the Scott Circuit Court.

All sitting. VanMeter, C.J.; Bisig, Keller, Lambert, Nickell, and Thompson, JJ., concur. Conley, J., concurs by separate opinion.

CONLEY, J., CONCURRING: The testimony of the officer relating the victim's statements are not an excited utterance in my opinion. The victim gave her statements to the officer in response to the officer's questions. She was in

24

an upstairs room, putting on clothes, after Arnett had been detained. The fact that the victim's answers were more responsive than the officer's questions may have called for do not make them excited utterances. I would hold this testimony was textbook hearsay—out-of-court statements by a third party used to prove the truth of the matter asserted. KRE 801(c). But because the victim testified at trial and was subject to cross-examination, the admittance of these statements was harmless.

COUNSEL FOR APPELLANT:

Molly Mattingly
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General

Courtney J. Hightower
Assistant Attorney General